UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PATRICIA I. THURMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-365 |
| | ) |
| VINCENNES UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Patricia I. Thurman ("Plaintiff"), sues Defendant, Vincennes University ("Defendant," "Employer," or "VU"), and, pursuant to Rule 8 Federal Rules of Civil Procedure, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a citizen of the State of Illinois who resides in Lawrence County, Illinois.

2. Defendant, VU, is incorporated in Indiana as Vincennes University and is an instrumentality of the State of Indiana that is charged by law with the administration of Vincennes University, an educational institution and public university of the State of Indiana. Vincennes' campus is located in the Southern District of Indiana. Defendant employs more than fifty persons within a seventy-five (75) mile radius from where the Plaintiff was employed.

3. The Court has subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. Section 1331 as this action arises under the provisions of 42 U.S.C. Section 2000e *et. seq.* (Title VII of the Civil Rights Act of 1964, as amended); the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12111 *et seq.*; the Age

1

Discrimination in Employment Act (ADEA; 29 U.S.C. §621 *et seq*.; the Americans with Disabilities Amendments Act; and the Family and Medical Leave Act of 1993 ("FMLA") 29 U.S.C. § 2601 *et seq*.

4. The venue is proper in the Terre Haute Division of the U.S. District Court in the Southern District of Indiana pursuant to 28 U.S.C. § 1391 because, *inter alia*, VU is located within the Terre Haute Division and is subject to this Court's personal jurisdiction. In addition, a substantial part of the events giving rise to the claim occurred within this Division.

5. All conditions precedent to the maintenance of this suit and Plaintiff's claims have occurred, been performed, or otherwise waived.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. The Plaintiff has exhausted all her administrative remedies prior to bringing the lawsuit.

7. Plaintiff filed her first charge, #440-2016-05765, jointly with the Equal Employment Opportunity Commission ("EEOC") and Indiana Civil Rights Commission ("ICRC") on August 25, 2016. See Exhibit A, attached hereto. On May 3, 2017, the EEOC issued a Notice of Right to Sue in connection with Plaintiff's charge. See Exhibit B, attached hereto.

8. Plaintiff filed her second charge, #440-2017-01871, jointly with the EEOC and ICRC, on or about January 27, 2017. See Exhibit C, attached hereto. On June 29, 2017, the EEOC issued a Notice of Right to Sue in connection with Plaintiff's charge. See Exhibit D, attached hereto.

## STATEMENT OF FACTS

9. That at all times relevant therein, Plaintiff, Patricia I. Thurman, is female, and is otherwise a protected party under Title VII, 42 U.S.C.A. § 2000e *et seq.*; ADA Amendments Act of 2008, § 5(a) 42 U.S.C.A. §§ 12112, 12112(b)(5); Age Discrimination in Employment Act (ADEA); 29 U.S.C. §621 *et seq.*; and the Family and Medical Leave Act of 1993 ("FMLA") 29 U.S.C. § 2601 *et seq*.

10. Employer, Vincennes University, is a public college incorporated under the laws of the State of Indiana.

11. Plaintiff was disabled as defined by the ADA, in that Plaintiff suffered from osteoarthritis in her left shoulder, which required a total shoulder replacement in 2015. Plaintiff also suffered from osteoarthritis in her right shoulder.

12. Plaintiff was employed full-time with VU in Knox County, Indiana from 1991 until her termination on October 28, 2016.

13. At all times relevant therein, Plaintiff performed her job duties in a satisfactory manner consistent with VU's reasonable expectations.

14. Plaintiff was employed as a "Lead Custodian" from 2004 until 2008. In 2008, Plaintiff was promoted to "Warehouse Manager."

15. On October 12, 2015, the Plaintiff was demoted from the position of Warehouse Manager to the position of "Custodian." No reason was provided for the demotion, as the Plaintiff had always received positive evaluations and had always met her employer's expectations.

16. Mr. Bruce McGregor was given the new title of "Warehouse Coordinator" and assumed the job duties formerly performed by Plaintiff in her role as Warehouse Manager prior to her demotion.

17. The Plaintiff went on medical leave for a left shoulder replacement on November 20, 2015.

18. On January 4, 2016, the Plaintiff returned to work with a medical restriction to not engage in custodial work. VU accommodated Plaintiff's medical restrictions by placing the Plaintiff in the position of Lead Custodian as Plaintiff was able to perform the tasks of this positions.

19. On May 3, 2016, Plaintiff received an employee evaluation which listed her position as Lead Custodian. Plaintiff was given an excellent employment evaluation by her supervisor, Mr. Jim Minderman, who gave her work performance a score of 93 out of a possible 100.

20. On July 6, 2016, Mr. William Kroger became the new director of the Physical Plant at VU. Mr. Kroger advised the Plaintiff that her job would not change under his leadership, as he "needed her for a lead [custodian]."

21. Through July of 2016, Plaintiff continued to perform the job duties of a lead custodian. During this time, Mr. Kroger advised the Plaintiff that he wanted her to not only be a "lead custodian," but that he also wanted her to be a "working custodian." Mr. Kroger also advised the Plaintiff that she "needed to get those restrictions lifted" so she could be put in the position of a working custodian.

22. On August 18, 2016, Plaintiff's physician provided VU with a list of medical restrictions from Tri-State Orthopedics, which stated that Plaintiff could not perform physical custodial work due to her disability.

23. On August 18, 2016, the Plaintiff met with Mr. Kroger and Renee Leydett, the Plant Secretary. Mr. Kroger asked the Plaintiff if she had the restrictions lifted yet. Plaintiff advised that her restrictions were permanent due to her disability.

24. On August 22, 2016, Plaintiff provided amended work restriction paperwork which stated that she could not lift more than 10 pounds, could not stand for more than one hour, and could not engage in repetitive pushing or pulling (no mopping, sweeping or vacuuming). The physician's note reiterated that Plaintiff's restrictions were permanent due to her disability.

25. On August 22, 2016, the Plaintiff was told to physically clean a building, which would require Plaintiff to perform tasks such as mopping, sweeping, and vacuuming, all of which were activities in excess of her medical restrictions.

26. On August 25, 2016, the Plaintiff was directed by her supervisor to wash windows and pick up trash. Again, Plaintiff was prohibited by her medical restrictions from performing these tasks.

27. On August 25, 2016, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge #440-2016-05765, alleging that Plaintiff had not received a reasonable accommodation and further, had been requested to perform work outside of her restrictions.

28. On August 26, 2016, Plaintiff met with Ms. Regina McCord and requested an accommodation for her restrictions. Plaintiff provided Ms. McCord with a formal

letter requesting an accommodation for her restrictions and offered suggestions for accommodations, such as being assigned as a non-working lead custodian, which would have allowed Plaintiff to work within her medical restrictions. See Exhibit E, attached hereto. During the meeting with Plaintiff, Ms. McCord stated that VU would be willing to accommodate the Plaintiff and that Ms. McCord would provide Plaintiff with more information the following week. However, Ms. McCord did not discuss the matter further with Plaintiff as promised, nor did VU even acknowledge Plaintiff's request for accommodations and/or reassignment.

29. On September 4, 2016, having received no response to her August 26, 2016 request, Plaintiff requested accommodation a second time, and applied for the position of First Shift Lead Custodian, the position she held prior to and after her surgery. See Exhibit F, attached hereto.

30. Plaintiff was not hired for the lead custodian position, though she was fully qualified for that position and had performed the duties of that position prior to and after her surgery.

31. The Plaintiff applied for and received leave pursuant to the Family Medical Leave Act on September 1, 2016, as a result of her disability. Plaintiff's request was approved by VU, subject to Plaintiff undergoing a fitness-for-duty examination prior to her return to her employment. As of October 27, 2016, the Plaintiff had used 33 days of FMLA leave during the 12-month calendar period.

32. Plaintiff was terminated from her employment on October 28, 2016, as a result of her medical restrictions being permanent, and for being unable to fulfill the job duties of

a custodian. See Exhibit G, attached hereto. At the time the Plaintiff was terminated, she was on FMLA leave and had another 27 days of leave remaining.

33. As a direct and proximate result of VU's actions as described above, the Plaintiff has lost, and is expect to continue to lose, income in for the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has further suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT I
### (Disability Discrimination and Failure to Accommodate)

34. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint of Discrimination as if fully set forth herein.

35. The ADA makes it unlawful for an employer to discriminate against a qualified individual on the basis of a disability in regard to discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment, including a failure to make reasonable accommodations to the known physical and mental limitations of an employee who is otherwise a qualified individual with a disability. See 42 U.S.C. § 12112(a) and (b).

36. At all relevant times, Plaintiff was "disabled" as defined under the ADA.

37. At the relevant times, Plaintiff was a "qualified individual" as defined under the ADA.

38. At all relevant times, the Defendant was a "covered entity" obligated to comply with the provisions of the ADA.

39. Defendant was aware of Plaintiff's disability.

40. Plaintiff was otherwise qualified for her position with Defendant with or without reasonable accommodations.

41. Plaintiff suffered numerous adverse employment actions from VU as a result of her disability including, but not limited to, the following:

    a. Plaintiff was not provided an accommodation for her disability;

    b. Plaintiff was subjected to harassment as a result of her disability;

    c. Plaintiff was ordered to perform tasks outside of her work restrictions on multiple occasions;

    d. Defendant failed to reassign and/or promote Plaintiff to the position of Lead Custodian though Plaintiff was qualified for the position; and

    e. Plaintiff was terminated from her position on October 28, 2016 as a result of her disability.

42. Furthermore, VU failed to engage in a meaningful interactive process with Plaintiff in order to determine that Plaintiff was fit for duty within her employment and identify potential work adjustments which could have allowed the Plaintiff to achieve a realistic work expectation.

43. Defendant violated the provisions of the ADA by discriminating against Plaintiff by failing to make reasonable accommodations for Plaintiff's known physical disabilities, record of impairment, and/or perceived disability after the Plaintiff requested that the Defendant provide certain reasonable accommodations which would not have posed an undue hardship on the Defendant.

44. As described above, the Defendant treated the Plaintiff's non-disabled peers more favorably than Plaintiff, as other individuals who were not members of the Plaintiff's

protected class were not subjected to the same kinds of adverse employment actions as Plaintiff.

45. As a direct and proximate result of VU's illegal discrimination as described above, the Plaintiff has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has further suffered emotional pain, mental anguish, loss of enjoyment of life, and non-pecuniary losses.

46. VU's conduct as alleged in this Count of the Complaint is properly categorized as intentional, oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for the rights and liberties of Plaintiff. Accordingly, an award of punitive damages against the Defendant is warranted pursuant to 42 U.S.C. Section 1981a(a)(2).

## COUNT II
### (Gender Discrimination)

47. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint of Discrimination as if fully set forth herein.

48. Plaintiff was in a protected class in that she was female.

49. That at all times throughout the course of her employment, Plaintiff adequately performed her job duties for VU and satisfied all reasonable expectations imposed upon her in connection with her employment.

50. Plaintiff suffered an adverse employment action, as detailed within this Complaint, as well as ultimately being terminated from her employment on October 28, 2016, as a result of her sex.

51. Plaintiff was treated differently than her similarly situated co-worker(s) at her employment. Other individuals who were not members of the Plaintiff's protected class with similar contributions and achievements have not been terminated under similar circumstances by VU.

52. That as a direct and proximate result of one or more of the above acts of discrimination on the basis of gender, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial damage to her professional reputation, emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorney's fees and costs.

## COUNT III
**(Retaliation)**

53. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint of Discrimination as if fully set forth herein.

54. Title VII makes it unlawful for an employer to discriminate against an employee because he or she has opposed any practice made an unlawful by Title VII, or if he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

55. As described above, Plaintiff's filing of charges of discrimination with the EEOC on August 25, 2016 and January 27, 2017 in regard to VU's discriminatory conduct was protected activity under Title VII.

56. Plaintiff, in good faith, believed that the above-described less favorable terms and conditions of employment to which she had been subjected were illegal workplace discrimination and/or harassment.

57. Defendant subjected Plaintiff to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Plaintiff's request for accommodations, and terminated Plaintiff's employment because of her protected activity in violation of Title VII.

58. Plaintiff suffered numerous adverse employment actions from VU as a result of the retaliatory conduct including, but not limited to, the following:

    a. Plaintiff was not provided an accommodation for her disability;

    b. Plaintiff was subjected to harassment as a result of her disability;

    c. Plaintiff was ordered to perform tasks outside of her work restrictions on multiple occasions;

    d. Defendant failed to reassign and/or promote Plaintiff to the position of Lead Custodian though Plaintiff was qualified for the position; and

    e. Plaintiff was terminated from her position on October 28, 2016 as a result of her disability.

59. VU treated similarly situated, non-complaining and/or non-charge filing employees more favorably than Plaintiff.

60. That as a direct and proximate result of one or more of the above acts of retaliation as described above, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial damage to her professional reputation, emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorney's fees and costs.

## COUNT IV
### (Sexual Orientation)

61. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint of Discrimination as if fully set forth herein.

62. The Plaintiff is a member of a protected class (sexual orientation) as defined by Title VII.

63. That at all times throughout the course of her employment, Plaintiff adequately performed her job duties for VU and satisfied all reasonable expectations imposed upon her in connection with her employment.

64. Plaintiff was terminated from her position on October 28, 2016 as a result of her sexual orientation.

65. Plaintiff was treated differently than her similarly situated co-worker(s) at her employment. Other individuals who were not members of the Plaintiff's protected class with similar contributions and achievements have not been terminated under similar circumstances by VU.

66. That as a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of her sexual orientation, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial damage to her professional reputation and emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

## COUNT V
### (Age Discrimination)

67. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint of Discrimination as if fully set forth herein.

68. Plaintiff was in a protected class as defined by the Age Discrimination in Employment Act (ADEA); 29 U.S.C. §621 *et seq.*, in that she was 58 years of age.

69. That at all times throughout the course of her employment, Plaintiff adequately performed her job duties for VU and satisfied all reasonable expectations imposed upon her in connection with her employment.

70. Plaintiff suffered an adverse employment action, as detailed within this Complaint, as well as ultimately being terminated from her employment on October 28, 2016, as a result of her age.

71. Plaintiff was treated differently than her similarly situated co-worker(s) at her employment. Other individuals who were not members of the Plaintiff's protected class with similar contributions and achievements have not been terminated under similar circumstances by VU.

72. That as a direct and proximate result of one or more of the above acts of discrimination on the basis of age, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial damage to her professional reputation, emotional distress damages, and is entitled to compensatory damages, punitive damages, as well as attorney's fees and costs.

**Count IV**
**(Family Medical Leave Act)**
**(29 U.S.C. 2615(a)(1))**

73. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint of Discrimination as if fully set forth herein.

74. 29 U.S.C. §2615(a)(I) of the FMLA makes it "unlawful for employers to interfere with, restrain, or deny the exercise of or attempt to exercise any FMLA right."

75. At all relevant times, Defendant was a covered "employer" within the meaning of 29 U.S.C. §2611(4) of the FMLA.

76. The Plaintiff was an "eligible employee" under 29 U.S.C. §2615 when she informed the Defendant of her intention to request leave for a serious health condition, having worked for the Defendant for more than 12 months and for over 1,250 hours in the prior calendar year at a worksite with more than 50 employees in a 75 mile radius.

77. The Defendant, within the scope of the Plaintiff's employment, interfered and restrained the Plaintiff's FMLA rights in violation of 29 U.S.C. 2615(a)(1), by discharging the Plaintiff for a serious medical condition after having approved Plaintiff taking leave for the same serious medical condition, and further, terminating the Plaintiff while she was on protected medical leave.

78. As a direct and proximate result of the discriminatory treatment described above, the Plaintiff has suffered emotional anguish and distress, physical injury, pain and suffering, humiliation, the loss of wages, inconvenience, and the loss of the enjoyment of life and other economic entitlements enjoyed by her prior to the Defendant's misconduct in connection with her employment.

### COUNT VII
**(Family Medical Leave Act)**
**(29 U.S.C. 2615(a)(2))**

79. All preceding paragraphs are incorporated by reference as if fully set out herein.

80. 29 U.S.C. § 2615 (a)(2) "prohibits an employer from discharging or discriminating against an employee for opposing any practice made unlawful by" the FMLA.

81. That the Plaintiff engaged in a protected activity pursuant to the FMLA.

82. Defendant took one or more adverse employment actions against the Plaintiff in retaliation for taking protected Family Medical Leave, specifically, by discharging the Plaintiff for a serious medical condition after having approved Plaintiff taking leave for a serious medical condition, and further, terminating the Plaintiff while she was on protected medical leave.

83. There is a causal connection between Plaintiff's protected activity and Defendant's employment actions against Plaintiff.

84. As a direct and proximate result of the retaliatory treatment described above, the Plaintiff has suffered emotional anguish and distress, physical injury, pain and suffering, humiliation, the loss of wages, inconvenience, and the loss of the enjoyment of life and other economic entitlements enjoyed by her prior to the Defendant's misconduct in connection with her employment.

WHEREFORE, PLAINTIFF RESPECTFULLY REQUESTS AS FOLLOWS:

A. Enter a declaratory judgment determining that the actions complained of in this Complaint are unlawful in violation of the ADA and issue a mandatory injunction against the Defendant to take affirmative steps to ensure that it and all individuals working under it refrain from engaging in any actions with respect to the Plaintiff which are prohibited under its terms;

B. Issue a mandatory injunction directing the Defendant to reinstate the Plaintiff to the position of employment that she would have had held had it not been for Defendant's unlawful conduct;

C. Award Plaintiff damages sufficient to compensate her for economic loss suffered as a result of the aforementioned conduct alleged in the Complaint;

D.  Award Plaintiff compensatory and punitive damages to the extent permitted by law;

E.  Assess against the Defendant the costs and expenses incurred by the Plaintiff in maintaining the above-captioned proceeding together with the reasonable attorney fees incurred by her in prosecuting the above- captioned cause;

F.  For pre-judgment and post-judgment interest at the prevailing legal rate; and

G.  For all other relief the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all matters so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/Ronald S. Langacker
Ronald S. Langacker, #20618-23
Attorney for Plaintiff
Langacker Law, Ltd.
102 E. Main Street, Suite 100
Urbana, Illinois 61801
(217) 954-1025
(217) 903-5255
ron@langackerlaw.com